IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BONNIE BUFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-034 |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Bonnie Bufford appeals the decision of the Deputy Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I.  BACKGROUND

Plaintiff protectively applied for SSI on January 8, 2014, alleging a disability onset date of June 1, 2013. Tr. ("R."), pp. 18, 203-08. Plaintiff was forty-four years old at her alleged disability onset date and forty-eight years old when the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 24, 29, 219. Plaintiff applied for benefits based on a combination of alleged impairments, including past heart attacks, chest pains,

rheumatoid arthritis, seizures, posttraumatic stress disorder ("PTSD"), depression, chronic anemia, iron allergy, swelling, and pain. R. 223. Plaintiff obtained a GED, and prior to her alleged disability accrued relevant work history as a cabinet refinisher and waitress. R. 225.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 95-132. Plaintiff then requested a hearing before an ALJ, R. 149, and the ALJ held a hearing on November 8, 2016. R. 35-94. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by Dorita P. Watson, a non-attorney representative, and William W. Stewart, a Vocational Expert ("VE"). Id. On January 18, 2017, the ALJ issued an unfavorable decision. R. 15-29. Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:[1]

1. The claimant has not engaged in substantial gainful activity since June 1, 2013, the alleged onset date (20 C.F.R. §§ 416.971 *et seq*.).

2. The claimant has the following severe impairments: coronary artery disease status post myocardial infarction and stenting, emphysema, chronic anemia, seizures, peripheral neuropathy, depression, anxiety, and personality disorder. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b),[2] except: lift, carry, push, and/or

---

[1]The Court cites to the rules in place at the time the ALJ issued his decision in January 2017, although the Commissioner's Rules and Regulations were subsequently revised later in 2017. See 82 Fed. Reg. 15132-01 (Mar. 27, 2017).

[2]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; frequently use right lower extremity foot controls; frequently use right upper extremity hand controls; frequently stoop, kneel, crouch, crawl, and climb ramps; occasionally balance; never climb ladders, ropes, and/or scaffolds; no exposure to hazards such as unprotected heights or moving mechanical parts; no operating a motor vehicle; no work in or around large bodies of water or power lines; occasional exposure to dust, fumes, gasses, or odors; frequent exposure to extremes of cold temperature; limited to work in a low stress environment, meaning the worker is limited to simple, routine, and repetitive tasks, is not required to meet a rigid, inflexible production schedule, make complex decisions, and there are no more than occasional changes in a routine work setting and any such changes should only be gradually introduced, but able to maintain concentration, persistence, or pace for periods of 2 hours, perform activities within a schedule, maintain regular attendance and complete a normal workday and workweek, except may occasionally be absent approximately 1 day per month; no interaction with the general public; and occasional close "team-type" interaction with coworkers. The claimant is capable of past relevant work as a cabinet refinisher, waitress, sash and door hand sander, sash and door stainer, and sash and door machine sander. This work does not require the performance of work-related activities precluded by the claimant's RFC. (20 C.F.R. § 416.965.)

R. 20-28.

Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, since the alleged disability onset date of June 1, 2013. R. 28. When the Appeals Council denied Plaintiff's request for review, R. 4-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because

---

or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

the ALJ failed to (1) consider several of Plaintiff's impairments at Steps Three and Four; (2) properly evaluate the medical source opinions of record; and (3) properly determine whether Plaintiff could return to past relevant work . <u>See</u> doc. no. 11 ("Pl.'s Br."); doc. no. 13 ("Pl.'s Reply"); doc. no. 19 ("Pl.'s Surreply").  The Commissioner maintains the ALJ's decision is supported by substantial evidence and should therefore be affirmed. <u>See</u> doc. no. 12 ("Comm'r's Br."); doc. no. 14 ("Comm'r's Surreply").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting <u>Bloodsworth</u>, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the

Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

### A.   Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (per curiam). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e.,

sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations.  Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).   When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

That is, an ALJ must consider all of a claimant's impairments, severe and non-severe, in combination.  Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant.  Id.

### B.   The ALJ Erred by Failing to Consider all Impairments at Step Four

The case should be remanded to the Commissioner for further consideration because the

ALJ did not properly address all of Plaintiff's impairments in formulating the RFC at Step Four. Specifically the ALJ failed to consider Plaintiff's PTSD either separately or in combination with her other impairments in formulating the RFC.  See Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 767 (11th Cir. 2014) ("[T]he ALJ omitted discussion of [plaintiff's] diagnosed mental illnesses besides depression, anxiety, and personality disorder, and did not determine whether these additional impairments such as . . . PTSD bore out [plaintiff's] alleged symptoms. . . . [W]ithout considering all of [plaintiff's] diagnosed impairments . . . the RFC is not supported by substantial evidence.") (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2014); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).

### 1.    Plaintiff's Treatment History as to PTSD and Hearing Testimony

Plaintiff listed PTSD as one of the medical conditions limiting her ability to work in her initial application for benefits.  R. 223.  PTSD is listed as part of Plaintiff's medical history in her medical records as early as April 2014 and, on May 9, 2014, Stephen R, Martell, M.Ed., noted Plaintiff's diagnosis of PTSD and "seizure like" symptoms and flashbacks.  R. 383, 606.

On July 3, 2014, Dr. Adrian Janit, Ph.D., performed a consultative exam of Plaintiff.  R. 558. Plaintiff reported emotional, physical, psychological, and sexual abuse by her stepfather when she was young and described having "nightmares" as a result.  R. 558.  She stated her stepfather was a member of the Ku Klux Klan and witnessed him "'burn[] up'" people and physically assault her mother when Plaintiff was a child.  R. 559.  Approximately thirty years ago, her stepfather was shot and murdered.  Id.  Plaintiff reported a subsequent history of physically abusive relationships, during which she would occasionally use Benadryl to numb herself.  Id.  Plaintiff stated televisions shows involving crimes of abuse remind her of past trauma she experienced.  Id.  Plaintiff reported experiencing "seizures" beginning three years

prior to the consultation and stated she has two to three seizures per week.  Id.  Plaintiff's boyfriend, Kevin Thomas, reported Plaintiff will disassociate from herself and wander away.  Id. He also stated Plaintiff will often "'go into a spell'" and he will have to "'bring her back.'"  Mr. Thomas said Plaintiff appears disoriented and unable to think during these dissociative periods. Id.

Dr. Janit found Plaintiff to be an unreliable reporter of her current situation due to her psychological distress but found Mr. Thomas to be reliable.  R. 562.  Dr. Janit reported Plaintiff was in "clear psychological distress," cried throughout most of the interview, and demonstrated poor concentration skills when overwhelmed.  Id.  Dr. Janit noted Plaintiff becomes markedly distressed when reminded of earlier trauma.  Id.  Accordingly, Dr. Janit diagnosed Plaintiff with PTSD and wandering associated with PTSD based on her difficulty in concentrating and processing thought, and frequent dissociative periods related to past trauma.  R. 562-63. Furthermore, Dr. Janet opined Plaintiff's "spells" of wandering and returning to reality in a random location without knowledge of how she got there, were "not clearly caused by seizures" and further medical clarification was necessary.  R. 563.  Dr. Janit diagnosed Plaintiff with persistent depressive disorder in addition to PTSD.  Id.

Based on Plaintiff's psychological distress, Dr. Janit found Plaintiff's ability to:  (1) understand and carry out instructions was mildly limited; (2) maintain attention and concentration was moderately limited; (3) respond appropriately to coworkers, supervisors, and the general public was markedly limited; (4) adhere to a work schedule and complete tasks in a timely fashion was possibly markedly limited; and (5) withstand the stresses and pressures associated with most work settings was likely markedly limited.  R. 563-64.

On December 16, 2014, Dr. Prakash Merai, M.D., diagnosed Plaintiff with PTSD based on reported symptoms of flashbacks, nightmares, and anxiety. R. 670. In support of his diagnosis, Dr. Merai indicated Plaintiff suffered "significant trauma and sexual abuse in her childhood." Id. Dr. Merai noted Plaintiff's past medical history of "seizures which appear[] to be partial complex" resulting in her "find[ing] herself in strange places . . . because of some period of confusion." Id. However, on May 11, 2015, Dr. Merai stated Plaintiff "does not appear to have true seizures since she describes she is aware of her surrounding[s] but seems to be confused after it." R. 673.

On July 26, 2015, Dr. Merai reported Plaintiff experienced such an episode just before her appointment and had difficulty with speech for approximately five minutes during the appointment before she began to improve. R. 674. On November 17, 2015, Plaintiff reported Lamictal, which had previously been prescribed by another physician, helped her dissociative episodes, and Dr. Merai prescribed 100 mg of Lamictal daily. R. 677. On February 15, 2016, Dr. Merai increased the dosage of Lamictal to 200 mg after Plaintiff reported increased daytime flashbacks. R. 678. On May 16, 2016, Plaintiff reported continued flashbacks, and Dr. Merai again increased the dosage of Lamictal to 300 mg. R. 679. On September 12, 2016, Dr. Merai noted Plaintiff appeared to be significantly better but Plaintiff did not acknowledge the change. R. 681.

Plaintiff's non-attorney representative noted Plaintiff's PTSD diagnosis and dissociative episodes in her brief prior to the hearing. R. 287. At the November 8th hearing, the ALJ briefly mentioned Plaintiff's PTSD diagnosis and equated the diagnosis with her anxiety disorder. R. 57. At the hearing, Plaintiff testified she has seizures regularly during which she cannot talk. R. 48-49. Plaintiff testified she is aware of her surroundings during

9

the seizures but cannot focus on what people are saying or doing.  R. 49.  Plaintiff stated they typically last from three to ten minutes and she needs to lie down for an hour-and-a-half to two hours afterward.  Id.  Plaintiff testified her periods of wandering occur during these seizures and the last time she wandered away and was lost occurred one year before the hearing.  R. 73.  Plaintiff stated her dosage of Lamictal was increased an additional 100 mg the night before the hearing due to the severity of the episodes.  R. 49.

### 2.     The ALJ's Decision and Seizure Disorder Findings

The ALJ determined Plaintiff's depression, anxiety, and personality disorder were severe impairments and did not identify any non-severe mental impairments.  R. 20-21.  The ALJ found Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 or 12.06 because Plaintiff had only:  (1) moderate restriction in activities of daily living; (2) moderate difficulties in social functioning; (3) moderate difficulties with regard to concentration, persistence or pace; and (4) no episodes of decompensation, which have been of extended duration.  R. 22.  The ALJ also determined Plaintiff did not have a marginal adjustment that would cause her to decompensate and there was no evidence suggesting inability to function outside of a highly supportive environment or independently outside her home.  R. 23.

The ALJ noted Plaintiff reported having one to five seizures per day, described her symptoms during the seizures, and acknowledged need for a period of rest afterward.  R. 24.  However, the ALJ determined Plaintiff's allegations regarding her seizures were not supported by the medical evidence of record.  R. 25.  The ALJ stated

> Records show no ER visits or injuries sustained due to seizures, though the claimant alleges she is on Lamictal for her seizures.  Aside from the claimant's alleges symptoms and limitations associated with this condition, there were no discussions of specific limitations or restrictions attributable to the

impairment.    Moreover,  the  last  documented  evidence  referencing  this condition was in 2014, suggesting improvement in her condition.

Id.

However, Plaintiff continued to report seizure-like activity to providers through at least July of 2016 and testified at the November 8th hearing she continued to experience seizures.   R. 48-49, 658, 668-680.   Furthermore, the record shows Dr. Merai in fact prescribed Lamictal for Plaintiff through at least August 12, 2016.  R. 681.  Thus, the ALJ did not fully consider the record as to Plaintiff's seizure disorder.  When compounded with the ALJ's failure to discuss Plaintiff's PTSD and Drs. Janit and Merai's opinion Plaintiff's purported  seizures  were  PTSD  symptoms,  as  discussed  below,  the  Court  cannot  say  the ALJ's opinion is supported by substantial evidence.

### 3.     The ALJ Erred by Failing to Consider Plaintiff's PTSD as a Source of Her Symptoms and Limitations

The ALJ failed to consider Plaintiff's PTSD as a potential source of limitations in determining Plaintiff's RFC.   In his decision, the ALJ did not identify Plaintiff's PTSD as either a severe or non-severe impairment, and the only mention of PTSD is his reference to Dr. Janit's diagnosis.  R. 25-28.  However, the ALJ did not discuss Dr. Janit's opinion as it related to limitations on Plaintiff's ability to work based on her PTSD symptoms or treating psychiatrist Dr. Merai's corroborating PTSD diagnosis, symptoms and treatment.

As  described  above,  Dr.  Janit  diagnosed  Plaintiff  with  PTSD  and  persistent depressive disorder, described the symptoms supporting those diagnoses, and described how those symptoms limited her ability to work.  R. 562-64.  The ALJ stated Dr. Janit "reported no psychological abnormalities that would preclude the claimant from engaging in any work activities  .  .  .  ,"   and  he  discounted  Dr.  Janit's  opinion  of  marked  restrictions  in  social

functioning as inconsistent with the objective medical record.  R. 26.  However, the ALJ did not discuss Dr. Janet's opinions, based on Plaintiff's PTSD and "extreme psychological distress," she would be markedly limited in her ability to (1) respond appropriately to coworkers, supervisors, and the general public; (2) adhere to a work schedule and complete tasks in a timely fashion; and (3) withstand the stresses and pressures associated with most work settings.  R. 564.  Nor did the ALJ discuss reports of Plaintiff's flashbacks and dissociative periods.

Additionally, the ALJ only discussed treating psychiatrist Dr. Merai's treatment notes relating to Plaintiff's GAF scores and never mentioned Dr. Merai's diagnosis of PTSD and Plaintiff's reports forming the basis of the diagnosis.  R. 27.  Moreover, the ALJ did not consider Plaintiff's reports to Dr. Merai of increased flashbacks during the day or Dr. Merai's firsthand observation of the aftermath of a dissociative period on July 26, 2015.  See R. 674.  Nor did the ALJ acknowledge Dr. Merai steadily increased the dosage of Plaintiff's Lamictal prescription to treat Plaintiff's symptoms.  Moreover, the ALJ also did not discuss Drs. Merai and Janit's opinions Plaintiff's reported seizure activity was not caused by seizures but by her PTSD.  See R. 563, 673.  Other providers also noted Plaintiff's purported seizure activity was unusual, unconfirmed, or potentially related to her PTSD.  R. 325-26, 345, 606.  Consideration of these opinions may warrant reconsideration of the ALJ's findings regarding Plaintiff's seizure disorder.

Finally, the ALJ did not consider the potential limitations imposed by Plaintiff's PTSD under the umbrella of one of her other noted mental impairments—depression, anxiety, or personality disorder—as he did not discuss Plaintiff's flashbacks or dissociative periods during his discussion of those impairments.  R. 22, 26-27.  Accordingly, because the ALJ failed to

consider Plaintiff's diagnosis of PTSD and how the associated symptoms might have limited her ability to work, the ALJ's decision is not supported by substantial evidence.  Himes, 585 F. App'x at 767.

The Commissioner argues a mere diagnosis of PTSD does not equate with a finding of disability.  Commr's' Br., p. 7.  Disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment.  See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Lewis v. Comm'r Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012) (per curiam); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (per curiam); 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  Rather, the record must contain evidence demonstrating that Plaintiff's PTSD affected her ability to work.  Drs. Merai and Janit's treatment notes described Plaintiff's flashbacks and dissociative periods as symptoms of Plaintiff's PTSD, and Dr. Janit specifically stated how those symptoms would limit her ability to work.  Thus, this is not a situation where there is merely a diagnosis in the record and no objective evidence in support of a finding of functional limitations.  Drs. Merai and Janit identified symptoms caused by this impairment and, if credited, they are symptoms that may affect Plaintiff's ability to work.

The Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered.  Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the

evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted.

The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 19th day of March, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA